# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

3M COMPANY,

             Plaintiff,

   v.

NATIONWIDE SOURCE INC.,

             Defendant.

Civil No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff 3M Company ("3M"), by and through its undersigned attorneys, and for its Complaint against Nationwide Source Inc. ("Defendant"). 3M hereby alleges as follows based on knowledge of 3M's own actions, and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.     This is an action for trademark counterfeiting, trademark infringement, unfair competition, and other Lanham Act violations—false endorsement, false association, and false designation of origin—arising from Defendant's ongoing misconduct using without authorization 3M's name and exploiting the COVID-19 pandemic for inappropriate commercial benefit.

2.     This lawsuit concerns Defendant's sale, and offer for sale, of counterfeit N95 respirator products falsely bearing 3M trademarks. These counterfeit products are not manufactured or authorized by 3M and likely do not meet the N95 standard. Accordingly, Defendant's sale of these counterfeit respirators is jeopardizing the health and safety of unsuspecting first responders and innocent customers who believe they are purchasing 3M-branded respirator products that meet the N95 standard. As a result, this unlawful activity is causing 3M and the public at large irreparable harm.

3.    This action also concerns the public being deceived into believing Defendant has a business relationship or affiliation with 3M when in fact Defendant does not have any relationship with 3M.

4.    3M brings this action to help protect those on the frontlines of the fight against the pandemic and the public against Defendant's unlawful conduct and to protect the goodwill of its brand and products.

5.    Defendant is not a 3M authorized distributor of 3M-branded respirator products or any other 3M products.

6.    Defendant is deceiving potential customers to enter into sham transactions, namely the sale of inappropriately marked counterfeit 3M-branded respirator products— which are inferior in quality and which likely do not meet the N95 standard.

7.    Defendant is trading on 3M's name, branding, intellectual property, products, and reputation for quality, and substantial goodwill after decades of 3M's investment to bring 3M-branded respirator products of the highest quality to users around the world.

8.    Defendant has created a fictitious association with 3M by utilizing 3M's branding, logo, and associated intellectual property to sell, and offer for sale, counterfeit respirator products bearing 3M trademarks.

9.    This conduct violates the Lanham Act and State of Minnesota laws for selling, infringing, engaging in unfair competition, false endorsement, false association, and false designation of origin, diluting 3M's trademarks, and falsely advertising.

10.    3M also requests that the Court preliminarily and permanently enjoin Defendant from using 3M's name, logo, branding, all associated trademarks and other intellectual property,

and from selling counterfeit 3M-branded respirator products bearing 3M trademarks or any other 3M products.

11.     Finally, 3M further requests the Court order Defendant to refrain from and cease any false claims of affiliation with and representation of 3M, and to disgorge any profits that Defendant has made from its sham transactions of selling counterfeit 3M-branded respirators.  3M will donate any monetary recovery in this action to COVID-19 charitable organizations.

## BACKGROUND

12.     Throughout its history, 3M has been a leader in innovation and developing healthcare and safety products for industry and consumers.  3M's personal protective equipment ("PPE")—and in particular 3M's N95 respirator products—are considered the gold standard for public health protection.

13.     Over the last hundred-plus years, 3M has invested hundreds of millions of dollars to advertise and promote its 3M-branded products to consumers throughout the world (including, without limitation, its 3M-branded respirator products).  During this time, 3M continuously used its 3M trademarks in commerce.

14.     Through this substantial investment and its extensive and continuous use of the famous 3M trademarks, 3M has established goodwill and an acclaimed reputation among the general public and healthcare and safety professionals for its high quality, safe and reliable products.  Consequently, the 3M brand has become synonymous with high quality.

15.     First responders, healthcare professionals, and other workers on the frontlines of the pandemic have come to depend on the quality and dependability that the 3M brand signifies.

16.     Due to the unique, continued threat posed by COVID-19, and 3M's ability to play a leading role in helping to protect public health, 3M has increased its production of respirator products to unprecedented levels.  As a result, 3M is increasing its capacity to produce 3M-branded

N95 respirator products and other respirator products to an annual rate of 2 billion. 3M's N95 respirator products are critical to those individuals and groups on the front lines combating COVID-19.

17.     In light of substantial ongoing fraud involving 3M's PPE, 3M is working with law enforcement—including the U.S. Department of Justice, the Federal Bureau of Investigation, and federal and state Attorneys General—to help them investigate and prosecute offenders selling counterfeit goods and committing other misconduct.

18.     3M has also established the COVID-19 Fraud Hotline, so that the public can report cases of suspected fraud in connection with PPE products to 3M.

19.     Including this action, 3M has filed over 25 lawsuits, and served over a hundred cease and desist letters against numerous bad actors perpetrating fraud amidst the COVID-19 pandemic.

## THE PARTIES

20.     Plaintiff 3M Company is a Delaware corporation, with a principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144. 3M is a diversified technology company with a global presence and is among the leading manufacturers of products for many of the markets it serves, including PPE such as 3M-brand N95 respirator products.

21.     Defendant is a Florida corporation having a principal place of business at 220 Congress Park Dr., Delray Beach, FL 33445.

22.     Based on information obtained from various sources, Defendant is using the 3M Marks in commerce to advertise, promote, offer for sale, and sell counterfeit 3M-branded N95 respirators, products including, for example, featuring pictures of and purporting to offer for sale 3M-brand N95 respirators on Defendant's social media pages, including Defendant's Twitter feed.

## JURISDICTION AND VENUE

23.     The claims for trademark counterfeiting, trademark infringement, unfair competition, false endorsement, false association, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Counts I - V, infra, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 *et seq.* Accordingly, this Court has original and subject-matter jurisdiction over Counts I – V pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C § 1121(a).

24.     3M's claims under the laws of the State of Minnesota, asserted in Counts VI - IX, *infra*, are so related to the federal claims asserted in Counts I - V, infra, that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Counts VI - IX pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

25.     Defendant has purposefully availed itself of the privilege of transacting business in this District. Defendant has also committed and intentionally directed tortious acts towards residents and governmental agencies in this District.

26.     A substantial part of the events giving rise to the claims asserted, infra, occurred in this District. Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

27.     Defendant is subject to personal jurisdiction in this District. Therefore, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**I.     3M**

28.     3M has grown from 1902 as a small-scale mining venture in Northern Minnesota to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world. Today, 3M's portfolio includes more than 60,000 goods and services, ranging from household and school supplies, to industrial and manufacturing materials,

to medical supplies and equipment.  3M actively safeguards and protects its intellectual property. This includes maintaining substantial numbers of federal trademark registrations.

A.    **The 3M Brand**

29.    The 3M brand is associated with products for a wide range of medical supplies, devices, and safety products, to include respirator products such as the 3M-branded N95 respirator products.  As a result, 3M-branded products are highly visible throughout doctors' offices, hospitals, and other medical facilities where patients and medical professionals rely upon the quality and effectiveness associated with the 3M brand.

B.    **The Famous "3M" Marks**

30.    Over the past century, 3M has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to consumers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark "3M" and the 3M logo shown below (together, the "3M Marks"):



31.    For decades, products offered under the 3M Marks have enjoyed enormous commercial success (including, without limitation, 3M-brand N95 respirators).  In 2020 alone, 3M's sales have been in the billions of dollars, much of which included products sold utilizing the 3M Marks.

32.    Over the same time period products offered under the 3M Marks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

33.    Based on the foregoing, consumers associate the 3M Marks uniquely with 3M and recognize them as identifying 3M as the exclusive source of goods and services offered under the

3M Marks.  Based on the foregoing, the 3M Marks have also become famous among consumers throughout the United States.

34.     To strengthen 3M's common-law rights in and to its famous 3M Marks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, inter alia, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "'036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, inter alia, respirators (the "'534 Registration"). (*See* Exhibits 1-3, attached hereto.)

35.     Each of the foregoing Registrations is valid, in effect, and on the Principal Trademark Register of the United States Patent and Trademark Office ("USPTO").

36.     Each of the foregoing Registrations is "incontestable" within the meaning of 15 U.S.C. § 1065.  Accordingly, each Registration constitutes conclusive evidence of: (i) 3M's ownership of the 3M Marks; (ii) the validity of the 3M Marks; (iii) the validity of the registration of the 3M Marks; and (iv) 3M's exclusive right to use the 3M Marks throughout the United States for, *inter alia*, respirators.

37.     3M's famous 3M Marks do more than identify 3M as the exclusive source of goods and services offered thereunder.  The famous 3M Marks also signify to consumers that 3M-brand products offered under the 3M Marks are of the highest quality and adhere to the strictest quality-control standards.  Now, more than ever, consumers rely on the famous 3M Marks' ability to signify that products offered under the 3M Marks are of the same high quality that consumers have come to expect of the 3M brand over the past century.

C.     **3M's Extensive Efforts to Combat the COVID-19 Pandemic**

38.     Medical professionals and first responders throughout the world are donning extensive PPE as they place their health and safety on the line in the battle against COVID-19. 3M is committed to getting personal protective equipment to healthcare workers and first responders.

39.     Legitimate 3M-branded N95 respirator products reduce exposure to potentially harmful airborne particles and contamination when worn and used appropriately.

40.     However, as demand has skyrocketed for PPE, and in particular 3M-branded N95 respirator products, in the midst of the pandemic, bad actors have sought to exploit the situation.

41.     To help protect the public and healthcare professionals—on the front lines of the COVID-19 pandemic—from trademark counterfeiting, misleading and substantially inferior PPE products, as well as to protect 3M's goodwill and reputation in its 3M brand, 3M is working diligently with law enforcement authorities, online e-commerce retailers, and others to combat unethical and unlawful business practices related to 3M-branded N95 respirator products.

42.     As shown below, additional examples of 3M's efforts to combat trademark counterfeiting, trademark infringement, and other unlawful activities during the COVID-19 pandemic include:

a.     3M posted on its website the U.S. per respirator, single case list price for the most common models of its 3M-branded N95 respirator products so that the public can identify and avoid inflated pricing.  *See* https://multimedia.3m.com/mws/media/1862179O/get-the-facts-n95-respirator-pricing.pdf:



b.      3M created a form on its website as well as a telephone hotline that the public can use to report suspected fraud.  Additionally, 3M has created online resources to help spot incidents of price-gouging, identify counterfeiting, and ensure products are from 3M authorized distributors.



c.      The 3M website further allows the public and interested parties to track 3M's enforcement activities against fraudulent activity in connection with 3M products, such as respirator products, during the COVID-19 pandemic.  *See* https://news.3m.com/English/press-releases/press-releases-details/2020/3M-Expands-Actions-Globally-to-Fight-COVID-Fraud-Counterfeiting-and-Price-gouging/default.aspx:



      d.     To date, 3M has fielded and investigated almost 10,000 fraud reports globally, filed at least 25 lawsuits, and has been granted at least nine temporary restraining orders and at least seven preliminary injunctions.  Additionally, over tens of thousands of false or deceptive social media posts and fraudulent e-commerce offerings, as well as hundreds of deceptive domain names have been removed.  *See* https://multimedia.3m.com/mws/media/1862180O/3m-covid-19-infographic-print-version.pdf:



II.    **Defendant's Unlawful Conduct**

43.    Even though 3M has been combatting counterfeiting and other unlawful activities seeking to exploit the demand for 3M-branded N95 respirator products during the pandemic, bad actors continue to take advantage of the public and unsuspecting users of respirator products. Defendant is engaged in such misconduct, which risks public health, impairs the supply chain supporting healthcare workers and others fighting the pandemic, and damages 3M's brand and goodwill.

44.    Defendant's misrepresentations and infringement of the 3M Trademarks are likely to confuse the public into falsely believing that Defendant is affiliated with 3M.  3M has gone to great lengths to make it known that 3M respirator products are only sold by 3M through its network of authorized distributors and wholesalers.    *See,    e.g.*, https://multimedia.3m.com/mws/media/1860221O/covid-n95-selling-facts.pdf.    By offering substantial quantities of purported 3M N95 respirators for sale, Defendant fraudulently misrepresents that it has a legitimate source of supply for these products, thus leading unsuspecting purchasers to mistakenly believe or assume that Defendant is authorized by or otherwise associated with 3M.

45.    Defendant has only been a registered Florida corporation since May of 2020.

46.    Defendant, who bills itself as "[t]he nation's premier source of PPE," prominently advertises purported 3M N95 respirators for sale on its social media sites.  For example, a "pinned" tweet at the top of Defendant's Twitter feed touts "[u]nmatched protected from #COVID19" and displays images purporting to be 3M-branded 1860 and 1870 N95 respirators.  Further, as seen below, Defendant advertises various other PPE equipment on its Twitter page, including identifying various 3M N95 respirator models with a "hashtag."







47.    Notably, the 3M brand is prominently displayed in the images that Defendant lists

on its Twitter feed, in addition to tagging the various 3M products by model name.

48.     As set forth below, Defendant has offered for sale and sold purportedly 3M-branded

N95 respirators for $7.95 each, grossly inflated prices.

49.     Defendant's mark-up is more than six times greater than 3M's listed prices.

| c | 3M's Per-Unit Price | Defendant's Offered Per-Unit Price | Markup |
|---|---|---|---|
| 1860 | $1.27 | $7.95 | 625% |

50.     As widely reported, state health departments around the country have been in

desperate need of respirators.  Luis Valadez, the Senior Director of Supply Chain for Hennepin

Country Medical Center ("HCMC") was tasked with searching for such supplies.

51.     On November 3, 2020, Valadez received an email solicitation from Defendant

offering various 3M N95 respirators for sale.  Defendant's solicitation purported to offer 3M N95

1860 and 1860S respirators for sale at a price of $7.95 each with minimum orders of 1,200.

52.     Cautious of the potential for fraud, Valadez asked Defendant if the respirators were

"manufactured in the US" and how HCMC would "know the authenticity" of the respirators.

Defendant offered to provide a report from SGS (an international inspection agency) but noted that

the products were otherwise manufactured overseas.

53.     HCMC ultimately ordered 8,040 model 1860 respirators and 2,040 model 1860S

respirators from Defendant.  HCMC ordered each such respirator at a unit cost of $7.95 each, an

amount far exceeding 3M's standard rate of $1.27 for a 3M 1860 respirator.

54.     HCMC received its order of N95 respirators from Defendant on November 16,

2020.

55.     On or around December 12, 2020, a nurse at HCMC noticed that one of the respirator provided by Defendant did not fit as expected, and suspected that the respirator may have been a counterfeit product.

56.     On December 14, 2020, HCMC reported the suspected counterfeit issue to 3M.

57.     3M identified the N95 respirator from Defendant as a counterfeit and informed Valadez that Defendant was not an authorized distributor of 3M products.

58.     3M has, in the past, attempted to confront purveyors of counterfeit 3M goods with cease and desist letters, instead of court actions.  Here, 3M sent a cease and desist letter to Defendant and received no response.  If Defendant's counterfeit actions are not stopped, further fake respirators could be sold to unsuspecting purchasers who then wrongly rely on them for protection to prevent communication of a dangerous and potentially deadly virus.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Trademark Counterfeiting – 15 U.S.C. §§ 1114(1))

59.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-58 of the Complaint as though set forth fully herein.

60.     Count I is a claim for trademark counterfeiting under U.S.C. §§ 1114(1).

61.     Defendant is using spurious designations that are identical to the 3M Trademarks.

62.     Defendant has been using these spurious designations identical to 3M Trademarks for the purpose of advertising, promoting, offering for sale, and selling counterfeit 3M-branded respirator products.

63.     Defendant has used these spurious designations identical to 3M Trademarks in commerce to advertise, promote, offer for sale, and sell 3M-branded respirator products including, for example, featuring pictures of 3M-brand N95 respirators on Defendant's social media pages.

64.     Defendant's use of the spurious designations identical to 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, customer confusion, and/or deception about whether Defendant's products originate with, and/or are sponsored or approved by, and/or offered with authorization from, 3M.

65.     Based on 3M's longstanding and continuous use of its 3M Trademarks in United States commerce, as well as the federal registration of the 3M Trademarks that are now incontestable, Defendant had actual and constructive knowledge of 3M's superior rights in and to the 3M Trademarks when Defendant began using spurious designations identical to 3M Trademarks.

66.     Upon information and belief, Defendant has made, and may continue to make, ill-gotten profits and gain from its unauthorized use of the 3M Trademarks, to which Defendant is not entitled at law or in equity.

67.     Defendant's acts and conduct complained of herein constitute trademark counterfeiting in violation of 15 U.S.C. §§ 1114(1).

68.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  The damage suffered by 3M is exacerbated by the fact that Defendant is advertising and offering for sale non-3M branded respirator products during a global pandemic when these products are playing a critical role in helping to protect public health.

69.     3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

70.     3M requests the relief set forth in the Prayer for Relief below.

## SECOND CLAIM FOR RELIEF
### (Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))
### (Infringement of the Federally Registered 3M Marks)

71.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1-70 of the Complaint as though set forth fully herein.

72.     3M is the exclusive owner of each of the federally registered 3M Marks.

73.     3M has the exclusive right to use each of the 3M Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling 3M-brand N95 respirators.

74.     3M's exclusive rights in and to each of the 3M Marks predate any rights that Defendant could establish in and to any mark that consists of "3M" in whole and/or in part.

75.     Each of the 3M Marks are fanciful and/or arbitrary when used for respirators and, therefore, are inherently distinctive.

76.     Each of the 3M Marks identify 3M as the exclusive source of products offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators) and, therefore, the 3M Marks have acquired distinctiveness.

77.     Defendant is using the 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-branded N95 respirators, including, for example, by advertising purported 3M-branded respirators on Defendant's Twitter feed.

78.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendant is 3M, and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

79.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue cause, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products are affiliated, connected, and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

80.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products originate with, and/or are sponsored or approved by, and/or offered with authorization from 3M.

81.     3M has not consented to the use of its famous 3M Marks by Defendant.

82.     Defendant had both actual and constructive knowledge of 3M's superior rights in its 3M Trademarks due to 3M's decades-long, continuous use of its 3M Trademarks in United States commerce, and 3M's federal registration of the 3M Trademarks.

83.     On information and belief, Defendant profited from its infringement of the 3M Trademarks.

84.     Defendant's acts and conduct described herein constitute trademark infringement in violation of 15 U.S.C. § 1114 (1)(a).

85.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court.  The damage suffered by 3M is worsened due to Defendant's taking advantage of an unsuspecting public and medical health professionals during a global pandemic—when 3M's respirator products are critical to those

frontline workers battling the COVID-19 pandemic.  Defendant's misconduct directly creates a

likelihood of confusion about 3M's role in the marketplace for respirator products.

86.     3M has been damaged by Defendant's misconduct in an amount to be proven at

trial and donated to charitable COVID-19 relief efforts.

87.     3M requests the relief set forth in the Prayer for Relief below.

## THIRD CLAIM FOR RELIEF
**(Unfair Competition, False Endorsement, False Association, and False Designation of
Origin Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))
(Use of the 3M Marks)**

88.     3M repeats and incorporates by reference the foregoing statements and allegations

in paragraphs 1-87 as though set forth fully herein.

89.     Count III is a claim for federal unfair competition, false endorsement, false

association, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

90.     On information and belief, Defendant's misconduct described herein constitutes

unfair competition, false endorsement, false association, and/or false designation of origin in

violation of 15 U.S.C. § 1125(a)(1)(A).

91.     On information and belief, Defendant's use of 3M's famous name and 3M

Trademarks to advertise, market, offer for sale, and/or sell purported 3M-branded respirator

products to customers, in general, and during a global pandemic such as COVID-19, specifically,

also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

92.     Defendant also falsely represented its products as affiliated, connected, endorsed

by, and/or associated with 3M.  Defendant sought to create the false impression that the products

they purported to offer to healthcare workers and others originate from 3M.

93.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's

acts and conduct complained of herein, unless enjoined by the Court.

94.    3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

95.    3M requests the relief set forth in the Prayer for Relief below.

### FOURTH CLAIM FOR RELIEF
**(Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))**
**(Dilution of the Famous 3M Marks)**

96.    3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-95 of the Complaint as though set forth fully herein.

97.    Count IV is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

98.    The 3M Trademarks are famous.  The 3M Trademarks were famous before, during, and after the time Defendant began using the 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including 3M-branded respirator products).

99.    Defendant's use of 3M's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including 3M-branded respirator products) dilutes the distinctive quality of the famous 3M Trademarks, such that the famous 3M brand name and 3M Trademarks' established value and selling power will likely be diminished.

100.    Defendant's use of 3M's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including, without limitation, 3M-branded respirator products) dilutes the distinctive quality of the famous 3M name and 3M Trademarks, such that the famous 3M Trademarks' ability to identify 3M as the exclusive source of products offered under the 3M Trademarks (including 3M-branded respirator products) will be diminished.

101.    Defendant's use of 3M's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including 3M-branded respirator products), in general, and during a global pandemic such as COVID-19 specifically, dilutes the reputation of the famous 3M Trademarks, such that the famous 3M Trademarks' established ability to indicate the superior quality of Products offered under such marks (including 3M-branded respirator products), will be diminished.

102.    Defendant's misconduct also threatens to harm the reputation of the 3M Trademarks, constituting dilution by tarnishment of the famous 3M Trademarks.

103.    Defendant's acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

104.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court.  The damage suffered by 3M is exacerbated by the fact that Defendant is opportunistically operating its illegal scheme and misrepresentations about 3M-branded respirator products during a global pandemic when those products are in great demand to help protect public health.

105.    3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

106.    3M requests the relief set forth in the Prayer for Relief below.

### FIFTH CLAIM FOR RELIEF
**(False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))**
**(Defendant's Website and Agent's Activities)**

107.    3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-106 of the Complaint as though set forth fully herein.

108.    Count V is a claim for false and deceptive advertising under 15 U.S.C. § 1125(a)(1)(B).

109.     Through its externally facing Twitter page, and on information and belief through email advertisements, Defendant made statements to the general public—and medical health professionals—that contained false, misleading, and/or deceptive statements about the nature, characteristics, and qualities of the products that Defendant allegedly had available for sale and constitute commercial advertising and/or commercial promotion.

110.     Defendant's acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

111.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's misconduct complained of herein, unless enjoined by the Court.  The damage suffered by 3M is exacerbated by the fact that Defendant is opportunistically operating its illegal scheme and misrepresentations about 3M-branded respirator products during a global pandemic when those products are in great demand to help protect the public health.

112.     3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

113.      3M requests the relief set forth in the Prayer for Relief below.

## SIXTH CLAIM FOR RELIEF
### (Unlawful Trade Practices – Minn. Stat. § 325D.44)

114.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1-113 of the Complaint as though set forth fully herein.

115.     3M owns the 3M Mark, which is a valid and protectable trademark as set forth above.

116.     Defendant's use of the 3M Mark in connection with goods or services constitutes trademark infringement and unfair trade practices under Minnesota Statutes, § 325D.44 because Defendant's use:

i.        Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

ii.        Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by another;

iii.        Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship approval, status, affiliation, or connection that the person does not have; and/or

iv.        Otherwise creates a likelihood of confusion or misunderstanding.

117.    Defendant's infringement is intentional, willful, malicious, and in bad faith.

118.    3M has no adequate remedy at law.

119.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  As a result of Defendant's unlawful conduct, 3M is entitled to the injunctive remedies specific in the Prayer for Relief, damages in an amount in excess of $75,000 to be proven at trial, applicable interest, and recovery of all reasonable attorneys' fees and costs incurred herein.

**SEVENTH CLAIM FOR RELIEF**
**(Trademark Infringement – Minn. Stat. § 333.28)**

120.    3M repeats and incorporates by reference the statements and allegations in paragraphs 1-119 of the Complaint as though set forth fully herein.

121.    The 3M Mark is a valid and protectable trademark.

122.    Defendant's actions are likely to cause confusion, to cause misrepresentation, to cause mistake, and/or to deceive the public as to the affiliation, approval, sponsorship or connection between Defendant and 3M.

123.    Defendant's actions constitute trademark infringement under Minn. Stat. § 333.28.

124.    3M has no adequate remedy at law.

125.    As a result of Defendant's conduct, 3M has suffered, and will continue to suffer, irreparable injury to its rights, and has suffered, and will continue to suffer substantial loss of goodwill and loss in the value of its trademarks, unless and until Defendants are enjoined from continuing their wrongful acts.

126.    As result of Defendant's unlawful conduct, 3M is entitled to the injunctive remedies specified in the Prayer for Relief, damages in an amount in excess of $75,000 to be proven at trial, applicable interest, and recovery of all reasonable attorneys' fees and costs incurred herein.

## EIGHTH CLAIM FOR RELIEF
### (Trademark Dilution – Minn. Stat. § 333.285)

127.    3M repeats and incorporates by reference the statements and allegations in paragraphs 1-126 of the Complaint as though set forth fully herein.

128.    The 3M Mark is a famous mark in the United States, including in the State of Minnesota.

129.    Defendant began using the 3M Mark in connection with the advertising, marketing, and promotion of products subsequent to the 3M Mark becoming famous.

130.    Defendant's advertising, marketing, and promotion of products, through its use of the 3M Mark, causes dilution by lessening the capacity of 3M to identify and distinguish the its products and services.

131.    Defendant has caused the dilution of the distinctive quality of the 3M Mark and lessened the capacity of the 3M Mark to identify and distinguish 3M's products and services Defendant's conduct has caused, and will continue to cause, irreparable harm to 3M.

132.    3M has no adequate remedy at law.  Thus, 3M is entitled to a permanent injunction enjoining Defendant from engaging in further acts of dilution.

133.    Defendant's conduct was intentional, willful, malicious, and in bad faith, thereby entitling 3M to treble damages, including attorneys' fees, pursuant to Minn. Stat. § 333.29.

134.    As result of Defendant's unlawful conduct, 3M is entitled to the injunctive remedies specified in the Prayer for Relief, damages in an amount in excess of $75,000 to be proven at trial, applicable interest, and recovery of all reasonable attorneys' fees and costs incurred herein.

**NINTH CLAIM FOR RELIEF**
**(Minnesota Consumer Fraud Act – Minn. Stat. § 325F.69)**

135.    3M repeats and incorporates by reference the statements and allegations in paragraphs 1-134 of the Complaint as though set forth fully herein.

136.    Defendant's used or employed false pretenses, misrepresentations, misleading statements, and/or deceptive practices, with the intent that others rely thereon in connection with the sale of merchandise.

137.    Defendant's conduct is enjoinable as provided in Minn. Stat. § 325F.69 and Minn. Stat. § 325F.70.

138.    3M has standing to pursue this claim under the Private Attorney General Statute, Minn. Stat. § 8.31, subd. 3a. 3M seeks to protect the public by suppressing and preventing Defendant's unfair, misleading, deceptive, or fraudulent representations and/or trade practices as described herein.

139.    As result of Defendant's unlawful conduct, 3M is entitled to the injunctive remedies specified in the Prayer for Relief, damages in an amount in excess of $75,000 to be proven at trial, applicable interest, and recovery of all reasonable attorneys' fees and costs incurred herein.

## PRAYER FOR RELIEF

**WHEREFORE**, based on Defendant's conduct complained of, herein, 3M asks that this Court:

A.  To enter an Order, finding in 3M's favor on each Claim for Relief asserted herein;

B.  Pursuant to 15 U.S.C. § 1116:

  1.  Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from using the 3M Marks (or any other mark(s) confusingly similar thereto) for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, 3M-brand N95 respirators;

  2.  Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from falsely representing itself as being a distributor, authorized retailer, and/or licensee of 3M and/or any of 3M's products (including, without limitation, 3M's 3M-brand N95 respirator) and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, 3M and/or any of 3M's products; and

  3.  Ordering Defendant to file with the Court and serve upon 3M's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

C.  Pursuant to 15 U.S.C. § 1117:

  1.  Order Defendant to provide 3M with a full accounting of all manufacture, importation, purchase, distribution and sale of products under the 3M Marks (including, without limitation, 3M-brand N95 respirators), as well as all profits derived therefrom;

  2.  Order Defendant to pay to 3M—so as to be donated charitably—all of Defendant's profits derived from the sale of infringing and counterfeit goods offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators); and

  3.  Award 3M—so as to be donated charitably pursuant to subpart I, infra— its costs incurred in this matter.

D.     Pursuant to 15 U.S.C. § 1118, order the destruction of all unauthorized goods and

materials within the possession, custody, and control of Defendant and Defendant's agents that

bear, feature, and/or contain any copy or colorable imitation of the 3M Marks:

1.     For any preliminary and permanent injunctive relief, that such relief extend to Defendant's agents, servants, employees, officers, and all persons and entities in active concert and participation with Defendant; and

2.     To order Defendant to file with the Court and serve upon 3M's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

E.     Pursuant to 3M's claims under the laws of the State of Minnesota:

1.     To award 3M—for donation to charitable COVID-19 relief efforts— damages, including treble damages in connection with Defendant's illegal acts; and

2.      To award 3M—for donation to charitable COVID-19 relief efforts—its costs and reasonable attorneys' fees incurred in this matter.

F.     To award such further restitution as authorized by law, which 3M will donate to

charitable COVID-19 relief efforts.

G.     To award 3M pre-judgment and post-judgment interest against Defendant, which

3M will donate to charitable COVID-19 relief efforts.

H.     Award 3M such other relief that the Court deems just and equitable.

## **JURY DEMAND**

3M requests a trial by jury for all issues so triable pursuant to FED. R. CIV. P. 38(b) and

38(c).

Respectfully submitted,

Dated:  December 30, 2020

**FISH & RICHARDSON P.C.**

By:  */s/ Conrad A. Gosen*
    John C. Adkisson (#266358)
    Conrad A. Gosen (#0395381)
    James Huguenin-Love (#0398706)
    FISH & RICHARDSON P.C.
    3200 RBC Plaza
    60 South Sixth Street
    Minneapolis, MN 55402
    Telephone: (612) 335-5070
    Facsimile:  (612) 288-9696
    adkisson@fr.com
    gosen@fr.com
    huguenin-love@fr.com

    *Attorneys for Plaintiff*
    *3M COMPANY*