UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M Company, | Case No. 20-cv-2694 (WMW/KMM) |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF** |
| Nationwide Source Inc., | |
| Defendant. | |

This matter is before the Court on Plaintiff 3M Company's (3M) motion for a temporary restraining order and preliminary injunctive relief against Defendant Nationwide Source Inc. (Nationwide). (Dkt. 5). For the reasons addressed below, the Court grants 3M's request for a preliminary injunction.

## BACKGROUND

3M is a Delaware corporation that manufactures healthcare and safety products for industries and consumers worldwide. As a result of the COVID-19 pandemic, a high demand exists for 3M's N95 respirator products (N95 masks). To keep them safe while working to mitigate the effects of the pandemic, first responders, healthcare professionals and other frontline workers depend on 3M's N95 masks. In order to meet the rising demand for N95 masks, 3M has increased its annual production of N95 masks to approximately 2 billion.

Nationwide is a Florida corporation with a principal place of business in Delray Beach, Florida. Incorporated in May 2020, Nationwide is in the business of selling healthcare products, including N95 masks.

3M commenced this trademark-infringement action against Nationwide on December 30, 2020. 3M's complaint alleges that Nationwide is using 3M's registered trademarks to advertise and sell counterfeit 3M-branded N95 masks. Most notably, 3M alleges that Hennepin County Medical Center (HCMC), believing that Nationwide was an authentic vendor of 3M products, purchased more than 10,000 counterfeit masks made by Nationwide and paid 625 percent more than 3M's standard price for authentic N95 masks. 3M alleges that Nationwide's activities were unlawful and endangered the lives of essential medical workers.

3M brings nine claims for relief, including five federal claims under the Lanham Act. 3M's first and second claims allege that Nationwide is engaging in trademark counterfeiting and infringement, in violation of 15 U.S.C. § 1114(1), by using spurious designations on its products that are identical to 3M's federally registered trademarks. 3M's third claim alleges that Nationwide is engaging in unfair competition, false endorsement, false association, and/or false designation of origin, in violation of 15 U.S.C. § 1125(a)(1)(A), by falsely representing its products as being affiliated with, connected to, or endorsed by 3M. 3M's fourth claim alleges that Nationwide is engaging in trademark dilution, in violation of 15 U.S.C. § 1125(c), by using 3M's trademarks in the sale of counterfeit products. 3M's fifth claim alleges that Nationwide is engaging in false advertising, in violation of 15 U.S.C. § 1125(a)(1)(B), by making statements to the general

2

public and medical health professionals that contain false, misleading, and/or deceptive statements about the nature and quality of the products Nationwide has for sale.

3M's remaining four claims allege violations of Minnesota state law. 3M's sixth claim alleges that Nationwide is engaging in unlawful trade practices, in violation of Minnesota Statutes § 325D.44, by using 3M's trademarks in a way that is likely to cause confusion among consumers as to the origin and nature of products for sale. 3M's seventh claim alleges that Nationwide is engaging in trademark infringement, in violation of Minnesota Statutes § 333.28, by using 3M's trademarks in a way that is likely to deceive the public as to the nature of Nationwide's and 3M's relationship. 3M's eighth claim alleges that Nationwide is engaging in trademark dilution, in violation of Minnesota Statutes § 333.285, by using 3M's trademarks in the advertising and sale of counterfeit products. 3M's ninth claim alleges that Nationwide is violating the Minnesota Consumer Fraud Act, Minnesota Statutes § 325F.69, by using false pretenses and misrepresentations with the intent that others will rely upon them in connection with the sale of merchandise.

On December 30, 2020, 3M filed the pending motion for a temporary restraining order and preliminary injunctive relief. 3M seeks to enjoin Nationwide from using 3M's trademarks on any goods or services, including, but not limited to, 3M-branded N95 masks. Nationwide has not responded to 3M's motion.

## ANALYSIS

Federal Rule of Civil Procedure 65 authorizes a district court to grant injunctive relief in the form of a preliminary injunction or temporary restraining order. When determining whether preliminary injunctive relief is warranted, a district court considers

the four *Dataphase* factors: (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant, (3) the balance between this harm and the injury that an injunction would inflict on other parties, and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). "A preliminary injunction is an extraordinary remedy," and the party seeking injunctive relief bears the burden of establishing that each factor favors granting such relief. *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). The core question in this analysis "is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113.

3M moves for both a temporary restraining order and preliminary injunctive relief. The legal standards for a temporary restraining order and a preliminary injunction are the same. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989); *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1031 (N.D. Iowa 2008) ("As this court has explained in past cases, it is well-settled in this circuit that applications for preliminary injunctions and temporary restraining orders are generally measured against the same factors, which were set forth in the seminal decision in *Dataphase*. . . ."). A court "may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Because Nationwide is on notice of the pending motion and was given an opportunity to respond, the Court will evaluate whether a preliminary injunction is warranted.

## I. Likelihood of Success on the Merits

3M contends that it is likely to succeed on the merits because 3M has valid registered trademarks and Nationwide's conduct involves counterfeit N95 masks that are likely to cause confusion.

In deciding whether to grant a preliminary injunction, the "likelihood of success on the merits is most significant." *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992). The moving party need not "prove a greater than fifty per cent likelihood that [it] will prevail on the merits," *Dataphase*, 640 F.2d at 113, rather the moving party must demonstrate a "fair chance of prevailing," *Paisley Park Enters. v. Boxill*, 253 F. Supp. 3d 1037, 1043 (D. Minn. 2017) (internal quotations marks omitted).

In the present case, 3M's primary claim for relief is a federal trademark-infringement claim pursuant to the Lanham Act, 15 U.S.C. § 1114(1). To establish a claim for trademark infringement, 3M must show that: (1) it has a valid, protectable trademark, and (2) the unauthorized use of that trademark creates a likelihood of confusion. *See Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839, 843 (D. Minn. 2005). The Court addresses each element in turn.

### A. Valid and Protectable Trademark

3M contends that its trademark registrations demonstrate conclusive evidence of 3M's ownership of valid federal trademarks.

After a trademark is registered with the United States Patent and Trademark Office (USPTO) and the mark has become incontestable, "the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the

5

registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce." 15 U.S.C. § 1115(b). To make a trademark "incontestable," after registration, the owner of the mark must have used the mark continuously for five consecutive years and have filed an affidavit of incontestability with the USPTO within one year after any five-year period of continuous use. 15 U.S.C. § 1065. 3M has provided persuasive evidence in support of its representation that it has made its marks incontestable.

Accordingly, 3M is likely to establish that it has a valid and protectable trademark, the first element in a federal trademark-infringement claim.

### B. Unauthorized Use that Creates a Likelihood of Confusion

The second element of a federal trademark-infringement claim is whether the unauthorized use creates a likelihood of confusion among consumers. 3M alleges that Nationwide's use of 3M's trademarks creates a likelihood of confusion among consumers. Courts consider six factors to determine whether a likelihood of confusion exists: "(1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree of competition between the products; (4) the alleged infringer's intent to 'pass off' its goods as the trademark owner's; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase." *Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 759–60 (8th Cir. 2005). The Court addresses each factor in turn.

### 1.      Strength of Plaintiff's Mark

3M alleges that its trademarks are both conceptually and commercially strong because of the uniqueness of the 3M name and global recognition of the 3M commercial brand.

"A strong and distinctive trademark is entitled to greater protection than a weak or commonplace one." *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). A trademark's strength is measured by both the mark's conceptual and commercial strength. *Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 888 (8th Cir. 2014). The conceptual strength of a mark is classified in the following categories listed here from the least to the most protectable: generic, descriptive, suggestive, or arbitrary. *See Frosty Treats Inc. v. Sony Comput. Entm't Am., Inc.*, 426 F.3d 1001, 1004–05 (8th Cir. 2005). "Arbitrary marks are words, symbols, or pictures with common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality, or characteristic of those goods or services." *Select Comfort Corp. v. Baxter*, 156 F. Supp. 3d 971, 984 (D. Minn. 2016).

Conceptually, "3M" is not a word, and it has no inherent relationship or meaning to N95 masks. Therefore, 3M's mark falls into the strongest conceptual category of trademarks because it is an arbitrary mark. *See 3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 193–94 (S.D.N.Y. 2020) (holding that 3M's mark is in the strongest category of conceptual trademark protection because "3M" is not a word, and has no inherent relationship to the goods or services for which the marks are used, namely, N95 respirators). Accordingly, 3M's marks are conceptually strong.

The commercial strength of a mark is based on the mark gaining a secondary meaning through public recognition and renown of the mark as demonstrated by "the amount of advertising, sales volume, features and reviews in publications, and survey evidence." *Select Comfort*, 156 F. Supp. 3d at 989 (citing *Lovely Skin, Inc.*, 745 F.3d at 888). "In order to establish secondary meaning, the user of a mark . . . must show that by long and exclusive use in the sale of the user's goods, the mark has become so associated in the public mind with such goods that the mark serves to identify the source of the goods and to distinguish them from those of others." *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994). Incontestability of a mark demonstrates a high level of commercial strength. *See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 391 (2d Cir. 2002) ("Because FSLC continually maintained its registration of the mark, FSLC's mark is incontestable and, as a matter of law, it has acquired secondary meaning."). As addressed in Part I.A. above, 3M has provided persuasive evidence that its trademarks are incontestable. Accordingly, its incontestable trademarks are commercially strong, and this factor weighs in favor of finding that Nationwide's use creates a likelihood of confusion.[1]

---

[1] Even in the absence of 3M's incontestable registrations, 3M is likely to establish that its marks have acquired secondary meaning and are commercially strong. 3M argues that it has invested "millions of dollars in advertising, marketing, and promoting goods and services under the 3M marks." 3M alleges that, for more than 100 years, it "has invested hundreds of millions of dollars to advertise and promote its 3M-branded products to consumers throughout the world" and "has established goodwill and an acclaimed reputation among the general public."

Because 3M is likely to establish that its trademarks are both conceptually and commercially strong, this first factor weighs in favor of finding that Nationwide's alleged infringement causes a likelihood of confusion.

### 2. Similarity Between Plaintiff's Mark and the Alleged Infringing Mark

3M contends that its trademarks are similar to the alleged infringing marks Nationwide is using because the marks are "identical."

Under the second step in the likelihood-of-confusion analysis, courts consider the similarity between a plaintiff's mark and a defendant's use of a similar or identical mark. *See Frosty Treats Inc.*, 426 F.3d at 1008. When evaluating the similarity between marks on a motion for preliminary injunction in a trademark-infringement case, the court "must attempt to recreate the conditions in which buying decisions are made, and the court should try to determine not what [the court] would do, but what a reasonable purchaser in market conditions would do." *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 504 (8th Cir. 1987).

Here, there is evidence in the record showing that Nationwide's masks include marks that are identical to 3M's registered trademarks. And Nationwide used 3M's registered trademarks on Nationwide's social media advertisements and in the alleged sale of counterfeit N95 masks.

Accordingly, this factor weighs in favor of finding a likelihood of confusion.

9

### 3. The Remaining Four Factors

The remaining four factors of the likelihood-of-confusion analysis are the degree to which the allegedly infringing product competes with the plaintiff's goods, the alleged infringer's intent to confuse the public, evidence of actual confusion, and the conditions of purchase of the disputed product. Here, because the same set of facts demonstrates each of these factors, the Court evaluates these factors together.

With respect to the third factor, which addresses the degree of competition, courts consider to what extent the products compete. *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 766 (8th Cir. 2010) ("If the two companies' products are closely related, confusion among customers is more likely."). With respect to the fourth factor, which addresses the alleged infringer's intent, courts consider whether the defendant intended to "pass off" its goods as the trademark owner's goods. *Id.* (observing that, although "proof of bad intent is not required for success in an infringement or unfair competition claim," the existence of such intent is a relevant factor to be considered). With respect to the fifth factor, which addresses evidence of actual confusion, a plaintiff is not required to prove incidents of actual confusion to succeed on a trademark-infringement claim. *Id.* at 768. Courts, however, give weight to the "extent of instances of actual confusion." *Id.* (internal quotation marks omitted). Finally, as to the sixth factor, which addresses the conditions of purchase and the degree of care expected of customers, courts consider to what extent the degree of care exercised by the purchaser in purchasing a product can mitigate or eliminate the confusion that might otherwise exist. *Id.* at 769.

Each of these factors is pertinent to HCMC's allegations that Nationwide sold counterfeit N95 masks to HCMC. On November 3, 2020, HCMC allegedly received an email from Nationwide offering to sell N95 masks. In response to HCMC's inquiry about the authenticity of the masks, Nationwide allegedly represented to HCMC that these masks were genuine. Believing that the masks were authentic 3M N95 masks, HCMC ordered more than 10,000 masks at a cost significantly above the standard rate for 3M N95 masks. After a nurse observed deficiencies in the quality of the masks, 3M verified that the masks purchased from Nationwide were counterfeit. As alleged, these facts demonstrate that Nationwide's masks closely resemble 3M's masks, Nationwide intended to infringe upon 3M's trademarks, and Nationwide's alleged infringement caused actual confusion.

"The last criterion, which addresses the type of product, the price, and the conditions of purchase, is more important in confusion-of-source cases where the degree of care that the purchaser exercises in purchasing a product can eliminate the confusion that might otherwise exist." *Frosty Treats Inc.*, 426 F.3d at 1010. HCMC is a sophisticated medical facility. That Nationwide allegedly deceived HCMC, resulting in the purchase of more than 10,000 inauthentic N95 masks, supports the conclusion that 3M is likely to demonstrate that Nationwide's counterfeit masks can confuse sophisticated consumers in the healthcare industry. Accordingly, 3M is likely to demonstrate that these remaining four factors weigh in favor of finding actual confusion.

In summary, 3M's allegations are sufficient to establish a high likelihood that 3M has a valid trademark and that Nationwide is using 3M's trademark, without authorization,

11

in a manner that creates a likelihood of confusion. Accordingly, the likelihood-of-success-on-the-merits factor weighs in favor of granting preliminary injunctive relief.[2]

## II. Irreparable Harm

The second *Dataphase* factor is the threat of irreparable harm. 3M contends that it will be irreparably harmed absent an injunction. In particular, 3M argues that its reputation and goodwill will be harmed if Nationwide is not enjoined from selling its counterfeit products.

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Because it is difficult to quantify, the loss of intangible assets such as reputation and goodwill can constitute irreparable injury. *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003). In a trademark-infringement action, "a finding that likelihood of confusion exists results in a presumption that a threat of irreparable harm exists." *Warner Bros. Entm't v. X One X Prods.*, 840 F.3d 971, 982 (8th Cir. 2016).

Nationwide's sale of counterfeit N95 masks risks irreparable harm to 3M's goodwill and reputation. *See Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987) ("Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [the trademark owner] can

---

[2] Because 3M's likelihood of success on its federal trademark-infringement claim alone is sufficient to warrant injunctive relief, the Court need not analyze 3M's likelihood of success as to its related federal-law and state-law claims.

12

demonstrate a likelihood of consumer confusion."); *Gold's Gym Licensing, LLC v. K-Pro Mktg. Grp., Inc.*, No. 09-CV-1211 (PJS/RLE), 2009 WL 2253247, at *2 (D. Minn. July 28, 2009) (finding defendant's use of identical marks threatened irreparable harm). By establishing a likelihood that it will succeed in proving likelihood of confusion, *see* Part I.B. *supra*, 3M has established a presumption that it will suffer irreparable harm. *See Warner Bros.*, 840 F.3d at 982. In failing to respond to 3M's motion, Nationwide also has failed to rebut the presumption of irreparable harm.

Accordingly, the irreparable-harm *Dataphase* factor weighs in favor of granting 3M's request for preliminary injunctive relief.

### III. Balance of Harms

3M contends that the balance-of-harms factor weighs in favor of granting 3M a preliminary injunction.

This *Dataphase* factor requires the Court to weigh the irreparable harm to 3M against the injury a preliminary injunction would cause Nationwide. *Dataphase*, 640 F.2d at 114. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l, Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994).

3M argues that, absent an injunction, it will suffer irreparable harm in the form of loss of goodwill, damage to its ability to control consumer expectations, and infringement of its protected trademarks. As Nationwide has not responded to 3M's motion, it has not identified any harms it will suffer if a preliminary injunction is granted. The issuance of a preliminary injunction is unlikely to harm Nationwide because Nationwide is not

13

authorized to sell 3M products. *See Buffalo Wild Wings Int'l, Inc. v. Grand Canyon Equity Partners, LLC*, 829 F. Supp. 2d 836, 846 (D. Minn. 2011) (declining to acknowledge that an injunction will pose any harm to defendants in a trademark-infringement action because "[d]efendants have indeed brought this harm upon themselves through their non-payment and infringement").

The balance-of-harms *Dataphase* factor weighs in favor of granting 3M's request for preliminary injunctive relief.

### IV. Public Interest

3M contends that preliminary injunctive relief would serve the public's interest, the fourth *Dataphase* factor. According to 3M, eliminating counterfeit masks from the market will protect public health and safety, particularly during the COVID-19 pandemic, by ensuring that those seeking the protection provided by 3M-branded masks benefit from 3M's quality standards.

When, as here, a plaintiff has demonstrated a likelihood of success on a trademark-infringement claim, there is a presumption that "[t]he public interest weighs in favor of protecting consumers against trademark infringement." *J & B Wholesale Distrib., Inc. v. Redux Beverages, LLC*, 621 F. Supp. 2d 678, 689 (D. Minn. 2007). It is in the public's interest to protect the "consumer's right not to be confused as to the origin or source of the goods." *Calvin Klein*, 815 F.2d at 505.

As 3M has demonstrated a likelihood of success on its trademark-infringement claim against Nationwide, a presumption exists that it is in the public's interest to grant 3M preliminary injunctive relief. *See J & B Wholesale*, 621 F. Supp. 2d at 689. By failing to

14

respond to 3M's motion, Nationwide also fails to rebut the presumption that it is in the public's interest to grant 3M a preliminary injunction in order to prevent consumer confusion.[3]

Accordingly, the public-interest *Dataphase* factor weighs in favor of granting 3M's request for preliminary injunctive relief.

In conclusion, the Court finds that each *Dataphase* factor supports granting 3M's motion for preliminary injunctive relief.  Accordingly, the Court grants 3M's motion.

## V.      Rule 65 Bond Requirement

Because the Court concludes that preliminary injunctive relief is warranted, the Court must determine whether to require 3M to post a bond as security for the effects of the injunction on Nationwide.  3M contends that it should not be required to post a bond.

The bond requirement to secure injunctive relief "is a security device, not a limit on the damages the . . . defendant[] may obtain against [the plaintiff] if the facts warrant such an award."  *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1309 (8th Cir. 1997).  Rule 65(c) of the Federal Rules of Civil Procedure provides, in pertinent part:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

---

[3]  3M also contends that an injunction would serve the interest of public health by ensuring that all 3M-branded masks meet 3M's standards.  But at this stage of the litigation, sufficient evidence does not exist in the record to conclusively determine the quality of the masks in question.  Because protecting consumers from confusion as to the source of the masks is sufficient to satisfy the public-interest *Dataphase* factor, the Court declines to address whether Nationwide's masks pose a public-health risk.

15

Fed. R. Civ. P. 65(c). District courts have broad discretion in setting a bond, but a district court abuses that discretion if it acts with an improper purpose, fails to require an adequate bond, or fails to make the necessary findings in support of its decision. *See Hill v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991). Although a district court must expressly consider whether to require a bond, a district court is not required to impose one. *See Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989).

Because Nationwide did not respond to 3M's motion, there is little in the record to assist the Court in determining the proper amount, if any, to set for a bond. But the bond requirement has been waived when the defendant did not object to the Court's decision to forego a bond requirement, *see, e.g.*, *Fantasysrus 2, L.L.C. v. City of E. Grand Forks*, 881 F. Supp. 2d 1024, 1033 (D. Minn. 2012), or when the defendant has not shown that any damages would result from the wrongful issuance of an injunction, *Bukaka, Inc. v. Cnty. of Benton*, 852 F. Supp. 807, 813 (D. Minn. 1993). Moreover, courts in this district recently have granted injunctions to 3M in similar cases and waived the bond requirement. *See 3M Co. v. Individuals, P'ships, & Unincorporated Ass'ns*, No. 20-cv-2348 (SRN/TNC), 2020 WL 6817650, at *5 (D. Minn. Nov. 20, 2020) (waiving bond requirement because defendant had not shown any damages would result from the wrongful issuance of an injunction); *3M Co. v. Legacy Med. Supplies, LLC*, No. 20-cv-1371 (ECT/KMM), 2020 WL 4046007, at *1 (D. Minn. July 14, 2020) (waiving bond requirement due to 3M's financial condition); *3M Co. v. Starsiak*, No. 20-cv-1314 (SRN/TNL), 2020 WL 3566718, at *8 (D. Minn. June 26, 2020). Because Nationwide has failed to respond and failed to

demonstrate that any damages would result from the wrongful issuance of an injunction, the Court concludes that 3M need not post a bond.

Accordingly, 3M is not required to post a bond to secure injunctive relief.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff 3M Company's motion for a temporary restraining order and preliminary injunctive relief, (Dkt. 5), is **GRANTED**, in the form of a preliminary injunction.

2. Defendant Nationwide Source Inc. and its agents, servants, employees, and officers are enjoined from using the 3M marks or any other marks confusingly similar to 3M for, on, or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, 3M-brand N95 masks.

3. Defendant Nationwide Source Inc. and its agents, servants, employees, and officers are enjoined from falsely representing Nationwide as being a distributor, authorized retailer, and/or licensee of 3M and/or any of 3M's products including, without limitation, 3M's 3M-brand N95 masks, and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with 3M and/or any of 3M's products.

4. Defendant Nationwide Source Inc. shall file with the Court and serve upon 3M's counsel, within 30 days after service of this Order, a report in writing under oath

setting forth in detail the manner and form in which Nationwide has complied with this Order.

5. This preliminary injunction shall remain in effect until further order of the Court.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 15, 2021                                             s/Wilhelmina M. Wright
                                                                                Wilhelmina M. Wright
                                                                                United States District Judge